UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DRINV LLC, MCRA LLC, and DAVE RISI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-CV-0219-CVE-JFJ |
| DOUGLAS RICHARDSON and SMART PRONG TECHNOLOGIES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 23) and Plaintiffs' Motion for Partial Summary Judgment on the Issue of Whether the Transfer at Issue was Fraudulent (Dkt. # 27). The parties do not dispute that defendant Douglas Richardson embezzled a substantial amount of money from his employer, Smart Prong Technologies, Inc. (Smart Prong), and there is also no dispute that Richardson transferred his shares of Smart Prong stock back to Smart Prong immediately after his embezzlement was discovered. Plaintiffs are shareholders who allege that the transfer of shares was fraudulent under the Uniform Fraudulent Transfer Act, OKLA. STAT. tit. 24, § 112 et seq. (UFTA), because they were also defrauded by Richardson and the stock transfer placed Richardson's assets out of their reach. Dkt. # 27. Smart Prong argues that the stock is being held in a trust for the benefit of shareholders, including plaintiffs, and there is no evidence suggesting that transfer of stock was intended to defraud plaintiffs. Dkt. # 23.

**I.**

Smart Prong employed Richardson as its chief financial officer (CFO) beginning on December 29, 2013. Dkt. # 23-1, at 1. Jim Weaver is the founder of Smart Prong and the chairman of its board of directors. Id. On June 14, 2016, Richardson contacted Weaver and asked to meet with Weaver in person, and they had a meeting the same day. Id. At the meeting, Richardson admitted that he had embezzled approximately $750,000 from Smart Prong, and later that same day he made the same admission to Smart Prong's president, Michael Freeman. Id. at 2. Weaver and Freeman demanded that Richardson immediately resign as CFO, and Richardson's resignation was effective on June 14, 2016. Id. at 4. Also on June 14, 2016, Richardson assigned all of his shares of Smart Prong stock back to the company, but the stock was worth significantly less than the amount he had embezzled. Id. at 2, 5. The parties engaged in settlement negotiations and drafted a Confidential Release, Reimbursement & Indemnification Agreement (Settlement Agreement) in which Richardson admitted that he had embezzled funds from Smart Prong, and the parties agreed that the shares of stock Richardson had transferred back to Smart Prong would be treated as partial consideration for the Settlement Agreement. Dkt. # 27-7. A subsequent audit of Smart Prong's finances revealed that Richardson had actually embezzled over $4.2 million from Smart Prong, and Smart Prong rescinded the Settlement Agreement due to Richardson's fraudulent misrepresentations concerning the scope of his embezzlement. Dkt. # 27-8. The stock that Richardson returned to Smart Prong is currently being held in a mitigation trust. Dkt. # 23-1, at 2. The beneficiaries of the mitigation trust are Smart Prong's shareholders who paid value for their shares prior to the discovery of Richardson's embezzlement, and the stock will remain in the trust until a liquidation event occurs. Id. at 2-3. Weaver states that the purpose of the mitigation trust is to obtain the highest possible

value for the shares in order to compensate Smart Prong's shareholders as much as possible. Id. at 3. When the shares are liquidated, Richardson will receive credit against the debt he owes Smart Prong. Id. On September 8, 2016, Smart Prong sent notice to its shareholders of Richardson's embezzlement, and plaintiffs received a copy of the notice. Dkt. # 23-1, at 3; Dkt. # 23-2, at 5-7. On October 31, 2016, Smart Prong filed a civil action in Missouri state court against Richardson to recover the funds that he embezzled. Dkt. # 27-2, at 2.

On December 16, 2015, the Missouri Securities Division (MSD) of the Office of the Secretary of State opened an investigation into Douglas A. Richardson, CPA, LLC and Richardson based on anonymous information that he was receiving large sums of money from Missouri residents, and the investigation revealed that Richardson embezzled approximately $4.5 million from Smart Prong. Id. at 1-2. The MSD learned that Richardson used his position as CFO of Smart Prong to solicit investors and he was the sole signatory on the account in which investor funds were deposited. Id. at 3-5. However, Richardson wrote checks to himself from Smart Prong's bank account in amounts in excess of $3 million, and he also received substantial sums from potential investors that were never deposited into Smart Prong's bank account. Id. at 5. On July 5, 2016, the MSD interviewed Richardson and he claimed that he received personal loans from many people, but he was unable to repay the loans after his construction company collapsed. Id. at 5-6. The MSD issued a cease and desist order to Richardson and initiated enforcement proceedings against him. Richardson was charged with six counts of wire fraud and four counts of money laundering in the United States District Court for the Western District of Missouri. United States of America v. Douglas A. Richardson, 18-3094-01-CR-S-MDH (W.D. Mo.). The Court has reviewed the docket

sheet for the criminal case, and Richardson has been convicted on all counts and he is in custody pending sentencing.

In addition to Richardson's debt to Smart Prong, he also received loans from various shareholders of Smart Prong, including Dave Risi, Drinv LLC, and MCRA LLC, and plaintiffs claim that Richardson owes them $402,021.25 for unpaid loans.[1] In March 2018, plaintiffs obtained judgments against Richardson in Virginia state court on claims for breach of promissory note. Dkt. # 27-1. Since entry of the judgments, plaintiffs claims that Richardson has taken various actions to hide his assets. Although plaintiffs cite no evidence to support these assertions, the Court will assume for the purpose of this Opinion and Order that Richardson engaged in conducted intended to prevent plaintiffs from collecting on their judgments.

On March 6, 2019, plaintiffs filed a petition in Tulsa County District Court seeking to set aside Richardson's transfer of stock to Smart Prong, and they seek a court order allowing them to levy on the shares. Dkt. # 2-1, at 12. Smart Prong removed the case to this Court on the basis of diversity jurisdiction. Richardson did not retain counsel to defend against plaintiffs' claims, and he has filed a pro se answer (Dkt. # 22). Richardson did not respond to plaintiff's requests for written discovery, including requests for admission, and Richardson has admitted certain matters by failing

---

[1] Plaintiffs' motion for summary judgment (Dkt. # 27) and response to Smart Prong's motion for summary judgment (Dkt. # 31) do not cite evidence in the record to support many of plaintiff's assertions. Plaintiffs state that "they did not think it necessary to cite to materials already provided in the record for preliminary matters . . . ." Federal Rule of Civil Procedure 56 plainly requires a party to "cit[e] to particular parts of materials in the record," and LCvR 56.1 also requires a motion for summary judgment and a response to "refer with particularity to those portions of the record upon which" the party relies. In this case, plaintiffs' failure to provide citations to the record will not affect the Court's ruling on the pending motions, but plaintiffs' counsel is advised that specific citations to evidentiary materials are required when seeking or responding to a motion for summary judgment.

to respond to plaintiffs' discovery requests. Dkt. ## 35, 51. Under Fed. R. Civ. P. 36, Richardson's admissions are binding on him but not on any other party. See Kittrick v. GAF Corp., 125 F.R.D. 103 (M.D. Pa. 1989). Plaintiffs and Smart Prong have filed motions for summary judgment (Dkt. ## 23, 27) on the issue of whether Richardson's transfer of stock to Smart Prong was fraudulent. Plaintiffs and Smart Prong have filed appropriate responses and replies, but Richardson has not filed a response to either motion.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

5

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Smart Prong argues that it is a legitimate creditor of Richardson and, regardless of his fraudulent activities, the transfer of his Smart Prong stock back to the company was not improper under the UFTA. Dkt. # 23, at 8-9. Smart Prong claims that it accepted transfer of the stock in good faith for reasonably equivalent value, and the transfer is not voidable as to Smart Prong. Plaintiff responds that the stock transfer to Smart Prong was fraudulent, because Richardson has not received a reasonably equivalent value for the transfer and there is ample evidence that Richardson engaged in fraudulent conduct in his business relations with plaintiffs.

Under OKLA. STAT. tit. 24, § 116,[2] a transfer by a debtor to a creditor is fraudulent if the transfer was made:

1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[2] In its motion for summary judgment, Smart Prong argues that plaintiff could not prevail on a claim under OKLA. STAT. tit. 24, § 117(B). Plaintiffs respond that they are not seeking relief under this section of the UFTA, and the Court will not consider § 117(B) in this Opinion and Order. See Dkt. # 31, at 7.

6

  a.  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

  b.  intended to incur, or believed, or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

As to actual intent to hinder, delay, or defraud a creditor, courts may consider the following factors to determine if a transfer was fraudulent:

1. the transfer or obligation was to an insider;

2. the debtor retained possession or control of the property transferred after the transfer;

3. the transfer or obligation was disclosed or concealed;

4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5. the transfer was of substantially all the debtor's assets;

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the amount of the obligation incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

OKLA. STAT. tit. 24, § 116(B). However, even if a debtor engaged in a fraudulent transfer, a transaction is not voidable against a transferee who "took in good faith and for a reasonably equivalent value . . . ." OKLA. STAT. tit. 24, § 120(A).

Many of plaintiffs' arguments concern Richardson's fraudulent conduct solely in relation to his dealings with plaintiffs, but Smart Prong does not dispute that Richardson engaged in this conduct. However, Smart Prong argues that plaintiffs' litigation with Richardson and his efforts to hide assets occurred more than 18 months after the stock transfer that is at issue in this case, and Smart Prong claims that there is no evidence that it was aware of Richardson's conduct in relation to plaintiffs when the stock transfer occurred. Dkt. # 32, at 3-4. Plaintiff has cited no authority suggesting that a debtor's post-transfer conduct has any bearing on whether the transfer between a debtor and a potentially good faith transferee is fraudulent under the UFTA. For the purpose of this Opinion and Order, the Court will assume that Richardson engaged in fraudulent acts in his business relations with plaintiffs, but this has little relevance to plaintiffs' UFTA claim against Smart Prong. Even if Smart Prong had been aware of Richardson's dealings with plaintiffs, it is undisputed that Smart Prong is a legitimate creditor of Richardson and it could take steps to collect on that debt. The Court will focus on the facts known or knowable to Smart Prong at the time the stock transfer was made in order to determine whether the transfer should be set aside under the UFTA.

Plaintiffs rely on the § 116(B) factors in an attempt to establish that the stock transfer between Richardson and Smart Prong was made with the intent to hide Richardson's assets from plaintiffs. Plaintiffs argue that Richardson was an insider when the transfer occurred, because Richardson had just resigned his position as CFO of Smart Prong. Dkt. # 27, at 9. The statute defines "insider" to include a "director, officer, or person in control" of a corporation. OKLA. STAT.

tit. 24, § 113.7(4). However, it is undisputed that Smart Prong had discovered Richardson's misconduct and the transfer of his stock back to Smart Prong was intended to partially redress his debt to the corporation. Smart Prong and Richardson were in an adversarial position at the time of the transfer and, even if Richardson had just resigned as CFO as Smart Prong, he was not receiving preferential treatment due to his prior employment with Smart Prong. Plaintiffs also argue that Smart Prong threatened Richardson with suit in order to convince him to assign his stock to Smart Prong. Dkt. # 27, at 9-10. This argument is supported primarily by Richardson's failure to respond to a request for admission that Smart Prong "threatened [Richardson] with a lawsuit after [he] made the confession" concerning his fraudulent conduct. Dkt. # 26-1, at 8. Plaintiffs admit that Richardson's admission is not binding on Smart Prong, and there is no other evidence suggesting that Smart Prong threatened to sue Richardson before the stock transfer occurred. Even if this were true, Smart Prong would have had a legitimate basis to bring a lawsuit against Richardson and this would not have been an empty threat. The Court does not find that Richardson's alleged status as an insider or the possibility that Smart Prong threatened to sue Richardson have any tendency to show that the stock transfer was intended to defraud plaintiffs.

The primary argument between the parties is whether Richardson received "reasonably equivalent value" for the transfer of stock back to Smart Prong. Plaintiffs contend that Richardson transferred his shares of stock to Smart Prong without receiving anything of value. Smart Prong argues that Richardson owed a debt to Smart Prong and it was not required to pay him face value for the stock. Dkt. # 32, at 8. Instead, Richardson will receive a credit against his debt to Smart Prong when the shares are sold pursuant to the terms of the mitigation trust. Id. The assignment of stock took place on June 14, 2016, and Richardson surrendered his shares of stock for the minimal

9

consideration of one dollar. Dkt. # 23-1, at 5. Plaintiffs have filed a copy of an unsigned settlement agreement between Smart Prong and Richardson in which Richardson admits that he embezzled money from Smart Prong. Dkt. # 27-7, at 1. Part of the consideration for the agreement was the prior transfer of Richardson's shares of Smart Prong stock, and at the time the agreement was executed Smart Prong was not aware of the full extent of Richardson's embezzlement. Id. at 2. Smart Prong subsequently sent a letter to Richardson rescinding the settlement agreement, because it learned that Richardson had substantially misrepresented how much money he had embezzled from Smart Prong. Dkt. # 27-8, at 1. The letter acknowledges receipt of all prior payments by Richardson, and the letter does not cancel the mitigation trust that was established for distribution of the stock returned to Smart Prong by Richardson. Id. Weaver states that the mitigation trust remains in effect and Richardson will receive credit against the amount he owes Smart Prong once the shares are sold for the benefit of shareholders. Dkt. # 23-1, at 3.

The Court finds that Richardson received a reasonably equivalent value for the shares of stock that he returned to Smart Prong following the discovery of his embezzlement. The UFTA defines "value" as the transfer of property to secure or satisfy an antecedent debt. OKLA. STAT. tit. 24, § 115.A. There is no dispute that Richardson owed an antecedent debt to Smart Prong at the time the transfer was made and, although the parties dispute the value of the stock, there is undisputed evidence that the eventual sale of the stock will be credited against Richardson's debt to Smart Prong. Plaintiffs claim that Richardson will receive nothing from the sale of stock due to the rescission of the settlement agreement, but this statement is not supported by any evidence and it is not a logical implication from the mere fact of the rescission of the Settlement Agreement. Plaintiffs complain that Smart Prong did not give any consideration for the transfer of Richardson's shares,

10

but they do not explain what consideration other than an offset against Richardson's existing debt would be reasonable under the circumstances. The mitigation trust established by Smart Prong for the benefit of shareholders may also incidentally benefit Richardson, because he will likely receive a greater credit against his debt to Smart Prong than if the shares had been sold immediately upon transfer. The procedure used by Smart Prong to obtain the return of Richardson's shares of Smart Prong stock does not suggest that Smart Prong was attempting to defraud other creditors of Richardson and, in fact, plaintiffs will eventually receive some value once the shares are sold pursuant to the terms of the mitigation trust.

The Court will consider other statutory factors concerning the alleged fraudulent nature of the transfer at issue, even if the factors are not specifically addressed by the parties. Richardson did not retain control of the stock after it was transferred to Smart Prong, and the transfer was not concealed from shareholders. Weaver states that Smart Prong sent notice of Richardson's actions and the terms of the mitigation trust to shareholders, and Risi testified in his deposition that he received this notice from Smart Prong. Dkt. # 23-1, at 3; Dkt. # 23-2, at 5. The parties dispute whether the transfer of stock was for substantially all of Richardson's assets, but the parties have not provided sufficient evidence for a determination of this issue. Plaintiffs have alleged that Richardson engaged in actions to hide his assets, but there is no evidence that Smart Prong engaged in any conduct to conceal the stock transfer or to hide its own assets from shareholders. Richardson is currently in custody awaiting sentencing on federal charges of wire fraud and money laundering, and there is no danger that he will abscond.

The Court has considered the totality of the circumstances and finds no evidence suggesting that Richardson and Smart Prong engaged in a fraudulent transfer under the UFTA. Neither

plaintiffs nor Smart Prong dispute that Richardson engaged in fraudulent conduct in relation to Smart Prong's investors, but there is no evidence that Smart Prong knew the extent of Richardson's conduct at the time the stock transfer occurred. Smart Prong was a good faith creditor of Richardson when the transfer occurred, and the stock is currently being held in a mitigation trust to maximize the benefit to Smart Prong's shareholders, including plaintiffs. This procedure will also have the incidental effect of maximizing the credit that Richardson will receive against the debt he owes to Smart Prong, and plaintiffs' assertions that Richardson has received nothing of value are meritless. This is not a case where a debtor engaged in a transfer to hide his assets from his creditors. See Scottsdale Ins. Co. v. Tolliver, 2012 WL 1581109 (N.D. Okla. May 4, 2012) (debtors fraudulently created LLCs and transferred their assets into the LLCs for the sole purpose of avoiding a judgment). Instead, the debtor, Richardson, transferred property to a legitimate creditor, Smart Prong, to partially satisfy an antecedent debt, and unfortunately the debtor had numerous other creditors who may not be fully repaid. Smart Prong may have been the first creditor to learn of Richardson's misconduct, but this does not make Smart Prong's actions fraudulent as to other creditors. Smart Prong has established that it is a good faith creditor under the UFTA and there are no factors present that would suggest the stock transfer was intended to defraud Richardson's other creditors.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 23) is **granted**, and Plaintiffs' Motion for Partial Summary Judgment on the Issue of Whether the Transfer at Issue was Fraudulent (Dkt. # 27) is **denied**. A separate judgment is entered herewith.

**DATED** this 18th day of March, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE